UNSEALED
PER ARREST
8/1/12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED

JUL 18 2012

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | **H 12 - 457** |
| v. | § | CRIMINAL NO. |
| | § | |
| ABDUL WAHEED ALEX SHITTU | § | 18 U.S.C. §2 |
| aka Waidi Alao Shittu | § | 18 U.S.C. §1349 |
| aka Waheed Alao Shittu | § | 18 U.S.C. §1347 |
| aka Alex W. Shittu | § | 18 U.S.C. §1343 |
| Defendant | § | 18 U.S.C. §1028A |
| | § | |

## ORIGINAL INDICTMENT

THE GRAND JURY CHARGES:

## A. INTRODUCTION

At all times material to this indictment:

1.     Title 18, United States Code, Section 24(b) defines a health care benefit program as any

public or private plan or contract, affecting commerce, under which any medical benefit, item, or

service is provided to any individual, and includes any individual or entity who is providing a

medical benefit, item, or service for which payment may be made under the plan or contract. The

Medicare Program ("Medicare"), also known as the Federal Health Insurance for the Aged and

Disabled Program, and the Texas Medical Assistance Program ("Medicaid") were health care

benefit programs as defined in Title 18, United States Code, Section 24(b).

2.     S & S Medical Supply Etc., LLC ("S & S") was a business located at 211 Murphy Road,

FM 1092, Suite A, Stafford, Texas 77477.

## THE DEFENDANT

3.     ABDUL WAHEED ALEX SHITTU, ("SHITTU"), defendant herein, at all times relevant, was a resident of the state of Texas, and the owner of S & S.

## THE MEDICARE PROGRAM

4.     Medicare was created by the Social Security Act of 1965. The United States Department of Health and Human Services administered the Medicare program through the Centers for Medicare and Medicaid Services ("CMS"). CMS contracted with Trailblazer Health Enterprises L.L.C. to administer the Medicare program in Texas.

5.     Medicare was comprised of four parts; however only Medicare Part B was applicable to this case. Medicare Part B was a voluntary insurance program that was financed by premiums paid by enrollees and contributions by the federal government. Medicare Part B was administered for CMS by four regional carriers known as Durable Medical Equipment ("DME") Medicare Administrative Contractors. Cigna Government Services was the Administrative Contractor for Part B DME claims in Jurisdiction C which included Texas. The National Supplier Clearing House ("NSC") Palmetto GBA, was contracted by CMS to handle the enrollment and reenrollment of suppliers of Durable Medical Equipment, Prosthetics, Orthotics and Supplies ("DMEPOS") in Texas.

6.     Individuals with Medicare Part B ("beneficiaries") were entitled, subject to certain conditions and requirements, to have payments made on their behalf for covered medical and health services, including DMEPOS. DME equipment can withstand repeated use, is primarily and customarily used to serve a medical purpose, generally is not useful to an individual in the absence of an illness or injury, and is appropriate for use in the home.

7.     To enroll in Medicare as a DMEPOS supplier and to receive reimbursement for DMEPOS provided to beneficiaries, a supplier submitted an application to CMS via NSC. The application required the supplier to agree to comply with and operate within the terms and conditions of the Medicare Program, including the Medicare laws, regulations, and program instructions. After the application was approved by NSC, a National Provider Identifier ("NPI") number was assigned to the supplier, enabling the supplier to submit claims for reimbursement to Medicare. Only providers who were enrolled in the Medicare program with a valid NPI received payments from Medicare for items and services provided to beneficiaries. Providers were prohibited from selling NPI numbers and allowing other individuals or entities to use their NPI numbers.

8.     For DMEPOS to be covered as a Medicare benefit, it had to be (1) eligible for a defined Medicare benefit category, (2) be reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member, and (3) meet all the applicable statutory and regulatory requirements.  Suppliers had to have a detailed written order on file prior to the delivery of certain equipment, including power operated vehicles and power wheelchairs, and prior to the submission of claims for reimbursement for other DMEPOS. Medicare required suppliers to maintain documentation supporting the medical necessity of DMEPOS provided to beneficiaries for seven years from the date of service. Required documentation included physician orders, face-to-face evaluations, onsite home evaluations, medical records, and proof of delivery.

## THE MEDICAID PROGRAM

9.     Medicaid was implemented in 1967 under the provisions of Title XIX of the Social Security Act of 1965. The State of Texas and the federal government shared the cost of funding

the Texas Medicaid Program. The Texas Health and Human Services Commission ("HHSC") was the single state agency with oversight responsibility for the Medicaid program in Texas. HHSC contracted with the Texas Medicaid and Healthcare Partnership ("TMHP") to administer Medicaid in Texas.

10.     Excluding special preventive and screening programs, Medicaid paid for supplies and services provided to Medicaid beneficiaries that were medically necessary for diagnosis or treatment of various health conditions. To receive reimbursement from Medicaid for services provided to Medicaid beneficiaries, a provider had to obtain a NPI, complete a Texas Medicaid provider enrollment application, and enter into a written provider agreement. Additionally, DME providers had to be Medicare certified. Medicaid required providers to keep all records necessary to fully disclose the services and supplies provided to Medicaid beneficiaries and the medical necessity of those services and supplies for at least five years from the date of service.

11.     When beneficiaries had both Medicare and Medicaid benefits, Medicaid was considered secondary insurance and paid the Medicare coinsurance and deductibles, within the program limits.

## A. COUNT ONE
### Conspiracy to Commit Health Care Fraud: 18 U.S.C. § 1349

12.     Beginning on or about December 1, 2008, and continuing thereafter to on or about September 30, 2009, in the Houston Division of the Southern District of Texas and elsewhere,

**ABDUL WAHEED ALEX SHITTU,**

defendant herein, did knowingly and willfully, combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit an offense against the United States, namely to execute and attempt to execute a scheme and artifice to defraud health care benefit programs, namely Medicare and Medicaid, and to obtain money owned by and under the custody

and control of Medicare and Medicaid by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services in violation of Title 18, United States Code, Section 1349.

## OBJECT OF THE CONSPIRACY

13.     It was the object of the conspiracy to unlawfully enrich the defendant, and others known and unknown to the Grand Jury, by submitting false and fraudulent claims for payment to Medicare and Medicaid, for durable medical equipment and orthotic devices that were not delivered to beneficiaries, that were not wanted and not needed by beneficiaries, and that were based on physician orders purchased by the defendant and not orders written by physicians who had seen and evaluated the beneficiaries.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means of the conspiracy included, but were not limited to, the following:

14.     The defendant would and did submit enrollment applications to Medicare and Medicaid to obtain a provider number for the submission of claims for payment to Medicare and Medicaid.

15.     The defendant would and did purchase physician orders for durable medical equipment, including wheelchairs and orthosis from recruiters and marketers that contained forged physician signatures.

16.     The defendant would and did submit claims to Medicare and Medicaid for durable medical equipment that was not delivered, and durable medical equipment that was not needed and wanted by beneficiaries.

17.     The defendant would and did enroll in the Electronic Data Interchange program so he could submit claims to Medicare electronically.

18.     The defendant would and did submit claims to Medicare using the names, NPI, and UPIN numbers of physicians who had not authorized the use of these forms of identification.

19.     The defendant would and did receive payments from Medicare and Medicaid via electronic funds transfer.

20.     The defendant would and did submit and cause to be submitted approximately $1,232,520.00 in false and fraudulent claims to Medicare and Medicaid between December 1, 2008 and September 30, 2009, for durable medical equipment and received approximately $414,516.61 as payment for those claims.

## OVERT ACTS

21.     In furtherance of the conspiracy and to effect the objects thereof, the defendant aided and abetted by others known and unknown to the Grand Jury, performed and caused to be performed, among others, the overt acts set forth in Counts Two through Nine of this Indictment, hereby re-alleged and incorporated as if fully set forth in this Count of the Indictment; all in violation of Title 18, United States Code, Section 1349.

## B. COUNTS TWO THROUGH NINE
### Health Care Fraud: 18 U.S.C. §1347

## HEALTH CARE FRAUD

22.     The Grand Jury re-alleges and incorporates by reference as if fully alleged herein paragraphs 1 through 11 of Count One of this Indictment.

23.     Beginning on or about December 1, 2008, and continuing thereafter to on or about September 30, 2009, in the Houston Division of the Southern District of Texas and elsewhere,

### ABDUL WAHEED ALEX SHITTU,

defendant herein, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully, execute and attempt to execute a scheme and artifice to defraud health

care benefit programs, namely the Medicare and Medicaid Programs, and to obtain money owned by and under the custody and control of Medicare and Medicaid by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services.

## PURPOSE OF THE SCHEME AND ARTIFICE TO DEFRAUD

24.     It was a purpose of the scheme and artifice to defraud to unlawfully enrich the defendant and others known and unknown to the Grand Jury, by submitting false and fraudulent claims for payment to Medicare and Medicaid, for durable medical equipment and orthotic devices that were not delivered to beneficiaries, that were not wanted and not needed by beneficiaries, and that were based on physician orders purchased by the defendant and not orders written by physicians who had seen and evaluated the beneficiaries.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

25.     The Grand Jury re-alleges and incorporates by reference as if fully alleged herein the Manner and Means alleged in paragraphs 14 through 20 of Count One of this Indictment.

## EXECUTION OF THE SCHEME AND ARTIFICE TO DEFRAUD

26.     On or about the dates set forth in the Counts below, in the Houston Division of the Southern District of Texas and elsewhere,

### ABDUL WAHEED ALEX SHITTU,

defendant herein, aided and abetted by others known and unknown to the Grand Jury, did execute and attempt to execute the aforesaid described scheme and artifice to defraud Medicare and Medicaid, by submitting and causing to be submitted false and fraudulent claims as set forth below:

| C O U N T | Name | M/care & M/caid* Claim # | Item Billed | M/care & M/caid* Claim Received | Amount Billed | Amount Paid | Nature of Falsity, Included but Not Limited to |
|---|---|---|---|---|---|---|---|
| 2 | D.C. | 6073 | 2 knee, 1 back, 2 elbow, 2 wrist, 1shoulder, heat pad | 04/24/09 | $4,060 | $2,660.73 | Doctor did not see beneficiary and order items; unauthorized use of UPIN and NPI. |
| 3 | D.C. | 9967 | Power Wheelchair and accessories | 05/18/09 | $7,790 | $4,608.86 | Doctor did not see beneficiary and order items; unauthorized use of UPIN and NPI. |
| 4 | L.M. | 6074 5982* | 2 knee, 1 back, 2 elbow, 2 wrist, 1shoulder, heat pad | 04/24/09 05/09/09* | $4,060 | $1,843.61 $529.61* | Doctor did not see beneficiary and order items; unauthorized use of UPIN and NPI. |
| 5 | L.M. | 9969 2303* | Power Wheelchair and accessories | 05/18/09 06/04/09* | $7,790 | $4,608.86 $1,152.22* | Doctor did not see beneficiary and order items; unauthorized use of UPIN and NPI. |
| 6 | E.R. | 3523 6410* | 2 knee, 1 back, 2 elbow, 2 wrist 2 ankle, heat pad | 06/01/09 06/17/09* | $4,490 | $2,842.75 $710.69* | Doctor did not see beneficiary and order items; unauthorized use of UPIN and NPI. |
| 7 | E.R. | 3522 3025* | Power Wheelchair and accessories | 06/01/09 06/17/09* | $7,790 | $4,578.86 $1,144.72* | Doctor did not see beneficiary and order items; unauthorized use of UPIN and NPI. |
| 8 | J.W. | 8150 | 2 knee, 1 back, 2 elbow, 2 wrist, 1 shoulder, heat lamp | 05/04/09 | $4,135 | $1,839.07 | Doctor did not see beneficiary and order items; unauthorized use of UPIN and NPI. |
| 9 | J.W. | 8146 | Power Wheelchair and accessories | 05/04/09 | $7,790 | $4,608.86 | Doctor did not see beneficiary and order items; unauthorized use of UPIN and NPI |

In violation of Title 18 United States Code, Sections 1347 and 2.

### C. COUNTS TEN THROUGH SEVENTEEN
**Wire Fraud, 18 U.S.C. §1343**

### WIRE FRAUD

27.     The Grand Jury re-alleges and incorporates by reference as if fully alleged herein paragraphs 1 through 11 of Count One of this Indictment.

28.     Beginning on or about December 1, 2008, and continuing thereafter to on or about September 30, 2009, in the Houston Division of the Southern District of Texas and elsewhere,

**ABDUL WAHEED ALEX SHITTU,**

defendant herein, did knowingly devise and intend to devise a scheme and artifice to defraud Medicare and Medicaid, and obtain money and property from Medicare and Medicaid by means of materially false and fraudulent pretenses, representations and promises, and transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds.

### PURPOSE OF THE SCHEME AND ARTIFICE TO DEFRAUD

29.     It was a purpose of the scheme and artifice to defraud to unlawfully enrich the defendant and others known and unknown to the Grand Jury, by submitting false and fraudulent claims for payment to Medicare and Medicaid, for durable medical equipment and orthotic devices that were not delivered to beneficiaries, that were not wanted and not needed by beneficiaries, and that were based on physician orders purchased by the defendant and not orders written by physicians who had seen and evaluated the beneficiaries.

### MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

30.     The Grand Jury re-alleges and incorporates by reference as if fully alleged herein the Manner and Means alleged in paragraphs 14 through 20 of Count One of this Indictment.

### EXECUTION OF THE SCHEME AND ARTIFICE TO DEFRAUD

31.     On or about the dates set forth in the Counts below, in the Houston Division of the Southern District of Texas and elsewhere,

**ABDUL WAHEED ALEX SHITTU,**

defendant herein, for the purpose of executing the aforementioned scheme and artifice to defraud, did knowing transmit and cause to be transmitted in interstate commerce by means of wire communication, writings, signs, signals, pictures, and sounds, as set forth below:

| Count | Date | Interstate Wire Communication |
|-------|------|-------------------------------|
| 10 | 04/24/09 | Electronic claim #6073 sent from Texas to Cigna Government Services in Tennessee |
| 11 | 05/04/09 | Electronic claim #8150 sent from Texas to Cigna Government Services in Tennessee |
| 12 | 05/11/09 | Wire transfer from Missouri to Texas (EFT#21275721) in the amount of $36,813.84 |
| 13 | 05/18/09 | Electronic claim #9969 sent from Texas to Cigna Government Services in Tennessee |
| 14 | 05/20/09 | Wire transfer from Missouri to Texas (EFT#21387884) in the amount of $37,923.75 |
| 15 | 06/01/09 | Electronic claim #3522 sent from Texas to Cigna Government Services in Tennessee |
| 16 | 06/03/09 | Wire transfer from Missouri to Texas (EFT#21529859) in the amount of $13,826.58 |
| 17 | 06/17/09 | Wire transfer from Missouri to Texas (EFT#21668678) in the amount of $18,356.06 |

In violation of Title 18 United States Code, Sections 1343.

## D. COUNTS EIGHTEEN THROUGH TWENTY-ONE
### Aggravated Identity Theft: 18 U.S.C. §1028A

32.    The Grand Jury re-alleges and incorporates by reference as if fully alleged herein the Introduction contained in paragraphs 1 through 11 of Count One of this Indictment.

33.    On or about the dates set forth in the Counts below, in the Houston Division of the Southern District of Texas and elsewhere,

### ABDUL WAHEED ALEX SHITTU,

defendant herein, for the purpose of executing and attempting to execute the aforesaid described scheme and artifice to defraud Medicare and Medicaid, did knowingly transfer, possess, and use, without lawful authority, a means of identification, namely the personal identification

information of Medicare participating physicians, including the name and Universal Provider Identification Number (UPIN) and National Provider Identification Number (NPI) of such physicians, during and in relation to violations of Title 18 United States Code, Sections 1349, 1347, and 1343, specifically, conspiracy to commit health care fraud, health care fraud, and wire fraud, as set forth below:

| COUNT | Type of ID used without Authority | Date of Unauthorized Transfer, Possession, and Use | Owner of Identification | Nature of Unauthorized Use of Identification, Included but Not Limited to: |
|---|---|---|---|---|
| 18 | UPIN and NPI | 04/24/09 | Dr. A. M. | UPIN and NPI used without authorization to submit claim to Medicare and Medicaid |
| 19 | UPIN and NPI | 06/01/09 | Dr. J. B. | UPIN and NPI used without authorization to submit claim to Medicare and Medicaid |
| 20 | UPIN and NPI | 06/23/09 | Dr. H. R. | UPIN and NPI used without authorization to submit claim to Medicare and Medicaid |
| 21 | UPIN and NPI | 07/07/09 | Dr. R. P. | UPIN and NPI used without authorization to submit claim to Medicare and Medicaid |

In violation of Title 18 United States Code, Sections 1028A.

## FORFEITURE NOTICE
### 18 U.S.C. § 982(a)(7); 18 U.S.C. § 982(a)(2)(B); 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. §2461(c)

34.     Pursuant to Title 18, United States Code, Section 982(a)(7), the United States give notice to defendant,

### ABDUL WAHEED ALEX SHITTU,

that upon conviction for a violation of Title 18, United States Code, Sections 1347 and 1349, offenses related to a federal health care offense, all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, shall be forfeited to the United States.

35.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by 28 U.S.C. §2461(c), and pursuant to Title 18, United States Code, Section 982(a)(2)(B), the United States give notice to defendant,

**ABDUL WAHEED ALEX SHITTU,**

that upon conviction for a violation of Title 18, United States Code, Sections 1343 and 1028A, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense, shall be forfeited to the United States.

## MONEY JUDGMENT

36.     Defendant is notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, which is the amount of at least $641,381.34.

## SUBSTITUTE ASSETS

37.     In the event that the property subject to forfeiture, as a result of any act or omission by any defendant,

>   a.  cannot be located upon exercise of due diligence;
>
>   b.  has been transferred or sold to, or deposited with a third party;
>
>   c.  has been placed beyond the jurisdiction of the Court;
>
>   d.  has been substantially diminished in value, or
>
>   e.  has been comingled with other property which cannot be divided without difficulty,

it is the intention of the United States to seek forfeiture of any other property of the defendant up to the value of such property, pursuant to Title 21, United States Code, Section 853(p),

incorporated by reference in Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

ORIGINAL SIGNATURE ON FILE

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
JULIE M. REDLINGER
ASSISTANT UNITED STATES ATTORNEY